UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| H&R BLOCK EASTERN ENTERPRISES, INC.,<br><br>Plaintiff/Counter-Defendant,<br><br>v.<br><br>HALLWOOD PLAZA LLC,<br><br>Defendant/Counter-Plaintiff. | Case No. 24-11972<br>Honorable Laurie J. Michelson |

**OPINION AND ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT [59] AND GRANTING PLAINTIFF'S PARTIAL MOTION FOR SUMMARY JUDGMENT [56]**

On the night of August 8, 2023, a heavily intoxicated man crashed his car into the Hallwood Plaza shopping center, igniting a fire. H&R Block was one of the tenants in the shopping center. The blaze tore through the H&R Block office, leaving the premises severely damaged and uninhabitable. In the days, weeks, and years since the incident, H&R Block and the shopping center owner, Hallwood Plaza LLC, have disagreed about who should repair the leased premises. In H&R Block's lawsuit and Hallwood Plaza's countersuit, they each accuse the other of breaching the parties' lease agreement.

Both parties moved for partial summary judgment. The motions are fully briefed and, while lacking in certain areas, the Court will decide them without further argument. E.D. Mich. LR 7.1(f)(2). For the reasons stated below, H&R Block's motion

(ECF No. 56) is GRANTED and Hallwood Plaza's motion (ECF No. 59) is GRANTED as to H&R Block's request for legal fees and DENIED as to all other claims.

## I.

H&R Block leased commercial space from Hallwood Plaza in Flint, Michigan for many years. (ECF No. 56, PageID.344 (signing lease in 1998 with Hallwood's predecessor in interest); *accord* ECF No. 59, PageID.537.).) But that relationship went up in flames the night of August 8, 2023. (*Id.*) Just after midnight, an intoxicated man (with no known connection to H&R Block) drove his car into the shopping center, hitting the H&R Block leased space and starting a fire. (*Id.*) While no one was injured, this event rendered the H&R Block unit "untenable." (ECF No. 59, PageID.537; *see* ECF No. 62-1, PageID.1273 (photo of leased premises from August 2023, shortly after the fire).)

In November 2023, Hallwood provided temporary space for H&R Block in another area of the shopping center. (ECF No. 59, PageID.541.) H&R Block made the move, believing it would only be temporary until the fire-damaged space was repaired—by Hallwood. (ECF No. 62, PageID.1260.) Hallwood likewise considered the move temporary until the original space was repaired—by H&R Block.

And so a stalemate ensued, with each side pointing the finger at the other to repair the unit. All the while, Hallwood charged H&R Block both full rent for the fire-damaged unit and rent for the temporary space. (ECF No. 59-4, PageID.881–882; ECF No. 62, PageID.1241.) H&R Block's failure to pay either rent, threatened

Hallwood, would constitute a breach of the parties' lease agreement. (ECF No. 59-4, PageID.881–882; ECF No. 59-3, PageID.618.)

Nearly one year after the fire, on July 30, 2024, H&R Block filed this lawsuit contending that Hallwood continued to repudiate its obligation to make repairs to the damaged space, forced H&R Block to stay in a less-desirable temporary space, and required it to pay full price rent on both locations. (ECF No. 15 (amended complaint).) It alleges breach of contract and seeks a declaratory judgment. (*Id.*) A few months later, in October 2024, and after nearly a year of paying double rent, H&R Block unilaterally relocated to a new, permanent location, effectively ending its lease with Hallwood. (ECF No. 62, PageID.1241; ECF No. 62-1, PageID.127.)

Hallwood sees things differently. It challenges H&R Block's reading of the lease agreement on multiple grounds. And it filed counterclaims alleging that H&R Block breached the agreement, not Hallwood. (ECF No. 18.)[1] It contends that H&R Block failed to maintain the sprinkler system, violated the indemnification provision, failed to maintain the premises/make necessary repairs, and did not properly insure the space as required by the lease. (*Id.*) It seeks damages for repairs, loss of rental income, and legal fees, as well as a declaratory judgment affirming that H&R Block is responsible for repairing the unit, maintaining the leased premises, and indemnifying Hallwood Plaza. (*Id.*)

---

[1] Both parties filed claims against the driver of the vehicle (ECF No. 15, PageID.51–52; ECF No. 18, PageID.88–91), but later voluntarily dismissed him from the case.

Now, the parties have both filed motions for partial summary judgment. Hallwood seeks summary judgment on H&R Block's claims for breach of contract, declaratory relief, and legal fees. (ECF No. 59.) It also seeks partial summary judgment on several of its own counterclaims: breach of contract (repair obligations) (count II), breach of contract (indemnification) (count III), breach of contract to provide insurance coverage (count IV), and declaratory relief (count V)—but not on its first claim, breach of contract (fire safety codes) (count I).

For its part, H&R Block does not seek summary judgment on any of its claims, but does seek summary judgment as to all of Hallwood's counterclaims except for declaratory judgment. (ECF No. 56.)

## II. Legal Standards

Under Federal Rule of Civil Procedure 56, "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a) A dispute is "genuine" if the evidence permits a reasonable fact-finder to return a verdict in favor of the nonmovant, and a fact is "material" if it may affect the outcome of the suit. *See Bethel v. Jenkins*, 988 F.3d 931, 938 (6th Cir. 2021). In making this determination, the Court must view facts in the record, and reasonable inferences that can be drawn from those facts, in the light most favorable to the nonmoving party. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

"This standard [of review] does not change simply because [one of] the parties present[s] [a] cross-motio[n] for summary judgment." *Nat'l Elec. Annuity Plan v.*

*Henkels & McCoy, Inc.*, 846 F. App'x 332, 336 (6th Cir. 2021) (quoting *Taft Broad. Co. v. United States*, 929 F.2d 240, 248 (6th Cir. 1991)). "[T]he filing of cross-motions for summary judgment does not necessarily mean that an award of summary judgment is appropriate." *Clair v. Zmo Homes LLC A Foreign Ltd. Liab. Co.*, No. 24-12030, 2026 U.S. Dist. LEXIS 88790, at *2 (E.D. Mich. Apr. 22, 2026) (quoting *Spectrum Health Continuing Care Grp. v. Anna Marie Bowling Irrevocable Tr.*, 410 F.3d 304, 309 (6th Cir. 2005)). "Where, as here, cross-motions for summary judgment are filed, the court must 'evaluat[e] each party's motion on its own merits, taking care in each instance to draw all reasonable inferences against the party whose motion is under consideration.'" *Perry v. Curtis*, No. 25-1815, 2026 U.S. App. LEXIS 23615, at *3 (6th Cir. Aug. 5, 2026) (citing *Ohio State Univ. v. Redbubble, Inc.*, 989 F.3d 435, 442 (6th Cir. 2021)).

The parties do not dispute that Michigan law governs their breach of contract claims. (*See* ECF Nos. 56, 59); *see also Firexo, Inc. v. Firexo Grp. Ltd.*, 99 F.4th 304, 327 (6th Cir. 2024) (interpreting contract under state law pursuant to the *Erie* doctrine). The elements of such claims are "(1) there was a contract, (2) the other party breached the contract, and (3) the breach resulted in damages to the party claiming breach." *Davis-Harris v. Makower Abatte Guerra Wegner Vollmer PLLC*, No. 24-11380, 2026 WL 789766, at *7 (E.D. Mich. Jan. 9, 2026) (quoting *Rochlani v. Aaron*, No. 336651, 2018 WL 4209001, at *2 (Mich. Ct. App. Sept. 4, 2018)). Neither party disputes that the lease agreement constituted a valid, binding contract. So the focus is on breach and damages.

Under Michigan law, lease agreements are interpreted like any other contract. *Tompkins, Inc. v. WLAJ-TV, LLC*, No. 24-10510, 2026 WL 797132, at *6 (E.D. Mich. Mar. 23, 2026) (citing *In re Smith Trust*, 745 N.W.2d 754, 757–58 (Mich. 2008)); *Detroit Rescue Mission Ministries v. Moore*, No. 296554, 2011 WL 4424420, at *2 (Mich. Ct. App. Sept. 22, 2011) ("A lease is a contract as well as a conveyance, and ordinary rules of contract interpretation apply.") (internal citation omitted).

When interpreting a lease agreement, the Court must "ascertain and give effect to the intent of the parties as reflected in the plain language of the contract." *Patel v. FisherBroyles, LLP*, 1 N.W.3d 308, 313 (Mich. Ct. App. 2022) (citing *Bayberry Group, Inc. v Crystal Beach Condo. Ass'n*, 964 N.W.2d 846 (Mich. Ct. App. 2020)). "The words of a contract are interpreted according to their plain and ordinary meaning, and this Court gives effect to every word, phrase, and clause while avoiding interpretations that would render any part of the document surplusage or nugatory." *Patel*, 1 N.W.3d at 313 (citing *Bayberry Group, Inc*, 964 N.W.2d at 852). The Court "must construe and apply unambiguous contract provisions as written." *PrimeOne Ins. Co. v. Grand Trumbull, LLC*, 446 F. Supp. 3d 248, 251 (E.D. Mich. 2020) (quoting *Rory v. Continental Ins. Co.*, 703 N.W.2d 23, 26 (Mich. 2005)). But ambiguous provisions, i.e., those that are susceptible to "irreconcilably conflicting interpretations" must be determined by the fact finder. *Patel*, 1 N.W.3d at 313 (citing *Klapp v United Ins. Group Agency, Inc.*, 663 N.W.2d 447 (Mich. 2003)).

The Court now turns to the application of these legal principles to the parties' arguments.

## III. Hallwood's Motion for Summary Judgment

The essence of H&R Block's lawsuit is that Hallwood breached the parties' lease agreement in two main ways: (1) by refusing to complete repairs of the damaged space and instead demanding H&R Block complete the repairs (ECF No. 15, PageID.49), and (2) by failing to fairly abate rent and instead charging full-price rent for the fire-damaged unit and the temporary space (*id.* at PageID.47–48). H&R Block also seeks a declaratory judgment that Hallwood's failure to make the repairs constitutes constructive eviction, resulting in termination of the lease and elimination of any further obligations. (*Id.* at PageID.50–51.) Hallwood seeks summary judgment on both breach of contract claims. (ECF No. 59.) The Court addresses each claim in turn.

### A. Claim I: Breach of Contract

#### 1. Failure to Repair

At its core, this case is about who is responsible for repairing the fire-damaged space under the lease agreement. Again, H&R Block claims Hallwood breached the contract by failing to timely repair the leased space and instead demanding that H&R Block repair the space. (ECF No. 15, PageID.48.) Hallwood contends that the lease only requires it to repair common spaces, not the fire-damaged unit entirely. (ECF No. 59, PageID.547–548.) More specifically, Hallwood believes the lease directs it, as the landlord, to restore the exterior of the unit, and H&R Block, as the tenant, to repair the interior. (*Id.* at PageID.546 ("Both Hallwood and H&R Block were responsible for repairing the Leased Premises; in general, a simplified interpretation of the parties' relative duties is that Hallwood was responsible for the exterior of the

Leased Premises, and H&R Block was responsible for the interior.").) Both parties rely on different lease provisions to support their positions. "In Michigan, '[t]he proper interpretation of a contract is a question of law.'" *Certified Restoration Dry Cleaning Network, L.L.C. v. Tenke Corp.*, 511 F.3d 535, 543 (6th Cir. 2007) (quoting *Coates v. Bastian Bros., Inc.*, 741 N.W.2d 539, 543 (Mich. Ct. App. 2007)).

Hallwood points to Section 10(B) of the lease agreement, titled "Landlord's Repairs," which outlines its general duty to make necessary repairs to "the foundation, the roof, the exterior of the perimeter demising walls, and the load-bearing structural columns and beams in the Leased Premises . . . ." (*Id.* (citing ECF No. 18-1, PageID.101).) And it cites Section 8(A), titled "Common Area[,]" which states that the "Landlord agrees to make all necessary repairs and maintenance to the Common Areas to keep same in good condition . . . ." (*Id.* at PageID.539 (citing ECF No. 18-1, PageID.99).) Taken together, Hallwood believes it is only responsible for repairing common areas of the leased property. (*Id.* at PageID.538–540.) And because it made "certain repairs to the front of the building," outside walls, and "temporary repairs to the roof," it believes it sufficiently discharged its contractual duty. (*Id.* at PageID.539–540.)

Hallwood also highlights the agreement's provisions outlining H&R Block's duties. It points to Section 10(C), titled "Tenant Repairs," as outlining H&R Block's duties to:

> maintain and make all repairs and alterations of every kind with respect to the Leased Premises (including necessary replacements) to keep it in good condition (including the storefront, glass, signs, ceilings, interior

> walls, interior side of perimeter walls, floor, floor coverings, plumbing, electric, heating and air conditioning, sprinklers and light fixtures) . . . .

(*Id.* at PageID.540 (citing ECF No. 18-1, PageID.101).) It specifically points to H&R Block's failure to repair the rooftop air conditioning units. (*Id.* at PageID.549.)

In contrast, H&R Block focuses the Court's attention on the specific provision in the lease agreement dealing with fire damage: Section 13 titled "Fire or Other Casualty." (ECF No. 62, PageID.1252 ("Although Hallwood Plaza takes the Court on a winding tour of irrelevant contract provisions, it is Section 13 of the Lease–and only Section 13–that controls the parties' repair obligations as to the Leased Premises in the event of a fire or casualty."); ECF No. 18-1, PageID.103 (Section 13 of lease agreement).) Hallwood asks the Court *not* to give effect to Section 13 because it says doing so would "introduce 'unnecessary conflict between [contract] provision[s]'" or essentially supersede one provision with another. (ECF No. 64, PageID.1309–1310.) The Court disagrees.

When interpreting a contract, section titles are instructive on identifying the most applicable contractual provision. *Travelers Prop. Cas. Co. of Am. v. Amerisure Ins. Co.*, No. 22-2103, 2023 WL 5627317, at *2 (6th Cir. Aug. 31, 2023) ("Michigan courts have repeatedly used contract headings to help interpret the rest of a contract.") (collecting cases). Where, as here, a specific section of the contract directly applies to the controversy, it is a settled rule of contract interpretation that the "specific [contractual] provision controls over a related but more general [contractual] provision." *DeFrain v. State Farm Mut. Auto. Ins. Co.*, 817 N.W.2d 504, 509 n.22 (Mich. 2012); *Schleben v. Carpenters Pension Tr. Fund-Detroit & Vicinity*, No. 13-

14464, 2015 WL 5655838, at *6 (E.D. Mich. Sept. 25, 2015) (describing "cardinal rul[e] of contract interpretation" that "[a] specific contract provision generally controls over a related but more general contract provision") (quoting *Tabernacle-The New Testament Church v. State Farm Fire & Cas. Co.*, 616 F. App'x 802, 811 (6th Cir. 2015)). For example, in *Defrain*, the Michigan Supreme Court decided that, where a plaintiff sought benefits connected to a hit-and-run accident, the specific notice provision of the insurance contract regarding hit-and-run contracts controlled over more general notice provisions. 491 Mich. at 368.

Based on these established rules of contract interpretation, H&R Block's position prevails. While the lease agreement directs Hallwood to make general repairs to the exterior and H&R Block to maintain the interior, *see* Sections 8 (titled "Common Area"), 10(B) (titled "Landlord's Repairs"), and 10(C) (titled "Tenant's Repairs"), it imposes different responsibilities when repairs are needed due to fire damage. In this scenario, the specific provision about fire damage, Section 13 (titled "Fire or Other Casualty"), controls. Indeed, if the Court construed the parties' general repair duties for non-fire damage (Hallwood repairs exterior, H&R Block repairs interior) to apply in the event of fire damage, then it would impermissibly "render [the fire damage] part of a contract surplusage or nugatory." *See Ken Holdings, LLC v. Auto-Owners Ins. Co.*, No. 325427, 2016 WL 6496096, at *4 n.7 (Mich. Ct. App. Nov. 1, 2016).

Nor is Section 13 of the lease ambiguous. Section 13(B) provides that if the leased property is severely damaged by a fire (as defined in that section) Hallwood

has two options: (1) terminate the lease or (2) keep the lease in effect but, if the fire renders the premises "wholly or partially untenable" then "there shall be a fair and equitable proportionate abatement of all Rent during that period." (ECF No. 18-1, PageID.103.) And where, as here, Hallwood chose to keep the lease in effect, Section 13(C) sets forth its repair obligations:

> If this Lease is not terminated by Landlord, this lease shall continue in full force and effect (Tenant waives any right conferred by any applicable law to terminate this Lease based on the damage), and Tenant shall, immediately on notice from Landlord, remove its fixtures, other property and debris as required by Landlord, and then Landlord shall rebuild the Leased Premises to the condition existing when the Leased Premises was originally delivered to Tenant; and on completion thereof Tenant shall restore Tenant's property and promptly reopen for business. Tenant shall use the proceeds of any recovery on Tenant's insurance policies for restoration or improvements made by Tenant to the Leased Premises, and for restoration and/or replacement of Tenant's equipment, trade fixtures and inventory, and to cover any business interruption loss.

(ECF No. 18-1, PageID.103 (emphasis added).)

The word "shall" is not permissive, its "plain and ordinary meaning . . . requires mandatory action." *Process Control & Instrumentation, LLC v. Emerson Process Mgmt. Power & Water Sols., Inc.*, No. 12-15670, 2014 WL 2931391, at *4 (E.D. Mich. June 30, 2014) (citing *AFSCME v. City of Detroit*, 704 N.W.2d 712 (Mich. Ct. App. 2005)). In other words, the plain and ordinary meaning of Section 13 of the lease agreement requires Hallwood to rebuild the H&R premises. Then, "on completion thereof," "[H&R Block] shall restore [its] property and promptly reopen for business." (ECF No. 18-1, PageID.103.)

Following fire repairs, the lease did not require Hallwood to return the property back with H&R Block's equipment, trade fixtures, and inventory—and H&R Block does not ask it to do so. (ECF No. 62, PageID.1255 ("a review of H&R Block's claims show that it is not seeking damages for the loss of its possessions in the fire and casualty – something it has recognized since the beginning is a cost it must bear."). Instead, the agreement required Hallwood to repair the leased premises and restore it to the condition when it was "originally delivered to Tenant." (ECF No. 18-1, PageID.103.) Or as H&R Block puts it, return a "restored 'white box space.'" (ECF No. 62, PageID.1254.) The lease directs the tenant (e.g., H&R Block) to restore the furniture, fixtures, and business materials using insurance proceeds. This reading aligns, and does not conflict, with Section 10. For repairs needed because of a fire (Section 13) and not some other reason (Section 10), Hallwood remained responsible for providing a tenable unit, exterior, and interior, and H&R Block was responsible for equipping the interior of the unit with its preferred furniture and fixtures.

Further cutting against Hallwood's reading of Section 10 is one of the last sentences in subsection C, which states: "Additionally, if any air conditioning or heating equipment (or other utility equipment) is damaged by vandalism, fire, lighting, or other casualty, then subject to the provisions of Article 35, Tenant shall repair (and if necessary, replace) the equipment, *notwithstanding Article 13*." (ECF No. 18-1, PageID.103 (emphasis added).) If the entire Section 10(C) provision applied to fire damage, it would be unnecessary to add a provision at the end specifying that the tenant repairs the HVAC system in the event of a fire. And that sentence directs

that even though Hallwood is generally responsible for fire repair ("notwithstanding Article 13"), the tenant must repair/replace the HVAC system when it is damaged by a fire. Thus, Section 10(B)'s provision that the tenant "shall maintain and make all repairs and alterations of every kind with respect to the Leased Premises (including necessary replacements) to keep it in good condition . . ." is best understood to set out H&R Block's general maintenance requirements in the absence of a fire, not its obligations in the event of a fire.

In addition to finding that Section 13 of the parties' lease agreement unambiguously required Hallwood to restore the premises to the condition when it was originally leased to H&R, the Court also finds that, on the current record, Hallwood has not done so. Images show the property in virtually the same state of disarray as when the fire occurred. (*Compare* ECF No. 62-1, PageID.1273 (photo of leased premises from August 2023, shortly after the fire), *with* ECF No. 62-2, PageID.1278 (photo of leased premises on April 1, 2026, two and a half years after the fire).) So Hallwood is not entitled to summary judgment on this portion of H&R's breach of contract claim.

Resisting this conclusion, Hallwood's reply brief raised new arguments about condition precedents. First, it says that H&R Block breached the lease by not restoring the interior of the unit "until Hallwood fully rebuilt the Leased Premises." (ECF No. 64, PageID.1312.) Then it says H&R Block breached the lease and prevented Hallwood's performance because "H&R Block's damaged property and

debris remain at the Leased Premises." (*Id.* at PageID.1313–1314.) Neither argument persuades.

For one, "arguments raised for the first time in a reply brief are forfeited." *See Stephens v. Nat'l City Corp.*, No. 20-3746, 2021 WL 3027864, at *3 (6th Cir. June 14, 2021) (citation omitted). For another, the lease agreement does not support the strained reading that H&R Block needed to first install new equipment (*e.g.*, office furniture, HVAC) into a fire-damaged and untenable unit. Additionally, Hallwood had the *option* to ask H&R Block to remove fixtures and debris before undertaking the necessary repair ("on notice from Landlord") but did not make that request. Instead, it unequivocally denounced any obligation to repair the inside of the unit. (ECF No. 59-3, PageID.592.) So it cannot now rewrite the record to suggest it asked H&R Block to remove items to prepare the space for Hallwood's renovation, or that such inaction from H&R Block was the reason it did not repair the unit.

Because a reasonable jury could conclude that the lease required Hallwood to restore the leased premises to their pre-fire condition when originally leased to H&R Block and that Hallwood failed to do so, Hallwood's request for summary judgment as to H&R Block's breach of contract claim and declaratory judgment relief regarding the duty to repair the unit is denied. The Court addresses Hallwood's counterclaim about repair later.

**2. Rent**

The next issue is rent payment. H&R Block claimed that Hallwood breached the lease agreement by forcing it to pay rent for both the fire-damaged space (without

abatement) and the temporary lease space. (ECF No. 15, PageID.48–9.) Hallwood seeks summary judgment on this claim based on equity principles and its interpretation of the lease. (ECF No. 59, PageID.550.) Both are flawed.

Hallwood says abating rent for H&R Block would have been "inequitable" in light of H&R Block's failure to repair the fire-damaged space. (*Id.* at PageID.551 ("H&R Block's own actions prolonged the untenantable state of the Leased Premises, and full abatement of rent would therefore be neither fair nor equitable.").) It noted that H&R Block was required to "keep the Leased Premises open and operated continuously" under Section 9(C) of the lease agreement. (ECF No. 59, PageID.550 (citing ECF No. 18-1, PageID.100–101).)

But "principles of equity alone do not serve as a basis for ignoring express contractual provisions under the guise of interpretation." *Bellwether Cmty. Credit Union v. CUSO Dev. Co., LLC*, 566 F. App'x 398, 404 (6th Cir. 2014) (citing *Rory v. Cont'l Ins. Co.*, 703 N.W.2d 23, 30 (Mich. 2005)). Hallwood again incorrectly focuses on the lease provisions that pertain to the parties' responsibilities when no fire has damaged the property and fails to properly account for Section 13 which makes it responsible for repairing a fire-damaged property. As already discussed, the lease makes H&R Block only responsible for replacing its personal property inside the unit and for repairing the HVAC equipment. So Hallwood is not entitled to summary judgment on its argument that rent abatement was inequitable.

Other provisions of the lease also preclude Hallwood's entitlement to summary judgment on the rent abatement claim. The lease offered Hallwood multiple ways to

proceed in the event a fire rendered the leased premises untenable. As discussed, Section 13(B) gave it the option of terminating the lease or keeping the lease going and fairly abating the rent. Section 13(E) offered a third path: Hallwood could keep the lease going and provide H&R Block with a temporary space while the repairs were underway. The provision, in relevant part, states:

> Landlord shall within three (3) days after Landlord has been notified of the damage provide Tenant with temporary space or a temporary trailer if permitted by code (the "temporary Space") at the Shopping Center within which Tenant shall conduct its business until the Leased Premises have been substantially restored so as to enable Tenant to resume its business operations at the Leased Premises. During Tenant's occupancy of the Temporary Space, all provisions of the Lease except as specifically modified herein shall apply to the Temporary Space as if the Temporary Space were the premises originally demised to Tenant. In the event Landlord is unable to provide Tenant with Temporary Space, then within ten (10) days after the expiration of the three (3) day period, Tenant shall have the right to terminate this Lease upon not less than ten (10) days prior written notice.

(ECF No. 18-1, PageID.103.)

None of Hallwood's three options—(1) terminate the lease; (2) continue the lease and abate rent; (3) continue the lease, provide temporary space, and continue charging rent until the original space is restored—allowed Hallwood to charge H&R Block rent for both the untenantable fire-damaged space and the temporary space. A plain reading of the lease indicates that Hallwood was to treat the temporary space provided to H&R Block as if it was the leased space. In other words, it could charge rent, unabated, for the temporary space, or charge rent, abated, for the damaged space, but it could not charge full rent for both the temporary space *and* the leased space.

In sum, Hallwood is not entitled to summary judgement on H&R Block's claim regarding rent abatement.

### B. Claim II

#### 1. Declaratory Judgment

H&R Block's amended complaint also seeks a declaratory judgment as to Hallwood's duties under Sections 8 and 13 of the lease, declaring that its various breaches of the contract constitute constructive eviction. (ECF No. 15, PageID.51.) Hallwood seeks summary judgment on this claim too because it provided a temporary space, which it contends precludes a finding of constructive eviction. (ECF No. 59, PageID.557.) But the reasoning above precludes summary judgment on this claim as well.

Under Michigan law, a constructive eviction occurs when "there is a disturbance of the tenant's possession by the landlord, the premises are rendered unfit for occupancy for the purposes for which they were demised, or the landlord deprives the tenant of the beneficial use and enjoyment of the property, in whole or part." *Cheetah Miner USA Inc. v. 19200 Glendale, LLC*, No. 23-10812, 2023 WL 3223856, at *3 (E.D. Mich. May 3, 2023) (quoting *Lewis v. Cross*, No. 276062, 2008 WL 2744378, at *1 (Mich. Ct. App. July 15, 2008)); *Belle Isle Grill Corp. v. City of Detroit*, 666 N.W.2d 271, 279 (Mich. Ct. App. 2003) ("Constructive eviction occurs 'when the act of the landlord is of such a character as to deprive the tenant . . . of the beneficial use and enjoyment of the whole or any part of the demised property, to the extent he is thus deprived.'") (citation omitted). This includes when "a landlord fails

to supply essential services." *Belle Isle Grill Corp.*, 666 N.W.2d at 279. "To establish a constructive eviction, a tenant must relinquish the premises within a reasonable time after the act or condition arises." *Wickins v. Lyon Marine, Ltd.*, No. 176355, 1997 WL 33353736, at *1 (Mich. Ct. App. Apr. 1, 1997) (citations omitted).

True, Hallwood provided H&R Block with a temporary space, but it was anything but temporary. Hallwood has repeatedly refused to repair the fire-damaged space, essentially forcing H&R Block to stay in the temporary space permanently unless and until it paid to repair the leased premises itself. In so doing, Hallwood "deprive[d] [H&R Block] . . . of the beneficial use and enjoyment of the whole or any part of the demised property . . . ." *Belle Isle Grill Corp.,* 666 N.W.2d at 279.

So Hallwood is not entitled to summary judgment on H&R Block's declaratory judgment claim either.

**2. Legal Fees**

Lastly, Hallwood seeks summary judgment on H&R Block's request for legal fees. H&R Block's complaint does not set forth the basis for its request for legal fees. "As a general rule, a federal court may not award attorneys' fees to the prevailing party unless a statute or a binding contract authorizes such a recovery." *Underground Pipe & Valve, Inc. v. Siteworks Constr. Co.*, No. 98-1298, 1999 U.S. App. LEXIS 23251, at *4 (6th Cir. Sept. 16, 1999) (citing *Hall v. Cole*, 412 U.S. 1, 4–5 (1973)). "Michigan follows th[is] American rule" so "attorney fees are not to be awarded unless specifically provided for by a statute, rule, or contractual provision." *Wyandotte Elec. Supply Co. v. Elec. Tech. Sys., Inc.*, 881 N.W.2d 95, 106–07 (Mich. 2016). The Court

sees no provision in the parties' lease, nor have the parties pointed to one, providing for such an award of attorneys' fees to the prevailing party.

Hallwood contends that legal fees are not available under Section 11(A) of the lease. (ECF No. 59, PageID.554.) This provision states that "[t]enant shall . . . save harmless and indemnify Landlord . . . against all losses, claims, liabilities, injuries, expense (including legal fees), lawsuits and damages of whatever nature . . . (ii) occurring in the Leased Premises except if caused by Landlord's own negligence." (ECF 18-1, PageID.102.) Hallwood contends that the only negligence alleged in the complaint is against the driver of the car who caused the fire and not Hallwood. (ECF No. 59, PageID.554–555.) By its very terms, this is an indemnification provision that deals with whether H&R Block must reimburse Hallwood's legal fees in certain circumstances. It has nothing to do with H&R Block's request to recover legal fees from Hallwood should it prevail on its breach of contract claim.

At bottom, however, H&R Block makes no argument in response to Hallwood's motion for summary judgment on this issue. In light of this forfeiture, together with the American Rule and the lack of any statute or lease provision providing for attorneys fees, the Court will grant Hallwood's motion for summary judgment on this issue only.

## IV. Cross Motions for Summary Judgment on Hallwood's Counterclaims

In response to H&R Block's breach of contract lawsuit, Hallwood asserted its own counterclaims. (ECF No. 18.) One, that H&R Block breached the contract by failing to maintain the fire sprinkler. (*Id.* at PageID.84.) Two, that H&R Block did

not "maintain and make all necessary repairs within the leased premises." (*Id.* at PageID.85.) Three, that H&R Block failed to indemnify Hallwood "for losses unrelated to Hallwood's negligence, since H&R Block did not allege negligence against Hallwood." (*Id.* at PageID.558; ECF No. 18, PageID.86.) Four, that H&R Block did not maintain adequate insurance, as required by the lease. (ECF No. 18, PageID.87.) And five, that Hallwood is entitled to declaratory relief that H&R Block is responsible for maintaining the premises and indemnifying Hallwood Plaza in this litigation, and that Hallwood has complied with its contractual obligations and is entitled to damages. (*Id.* at PageID.87–88.)

In their cross motions, H&R Block seeks summary judgment on all but the last claim for declaratory relief, (ECF No. 56), while Hallwood seeks summary judgment on all but the first claim related to the sprinkler system (ECF No. 59, PageID.558).

**1. Counterclaim I: Breach of Contract (Fire Safety Codes)**

Hallwood's first counterclaim is that H&R Block breached Sections 7 and 10(B) of the lease by failing to maintain the fire sprinkler system, thereby violating fire safety codes. Hallwood's damage claim appears to be that the fire was exacerbated by a failure of the sprinkler system to work properly.

H&R Block contends that this claim fails for want of evidence. (ECF No. 56, PageID.347.) Indeed, Morris Shasho, owner of Hallwood Plaza, testified that he had no indication that H&R Block's sprinklers were not maintained. (*See* ECF No. 59-4, PageID.854 ("(Q) Have you ever seen any report like this or others to suggest that any of the fire systems were anything other than in good condition? (A) No. (Q) Have

you ever seen anything to suggest that there was action needed on H&R Block's fire system? (A) No.") (Shasho deposition).) Additionally, when a tenant's sprinkler system was inspected, the "entire system for the entire shopping center" was inspected, yet Shasho had "no records to suggest that the system has ever not worked correctly[.]" (*Id.* at PageID.895–896.) Nor has Hallwood come forward with any evidence that the sprinkler system failed to perform the night of the fire. (*Id.* at PageID.847 (answering "no" when asked).) All it has is Sasho's speculation:

> (Q) So sitting here today, Hallwood Plaza, LLC has no facts or evidence to suggest that the sprinkler system at H&R Block's office didn't do anything other than what it should have done, correct?
>
> (A) It could be and it could be not. That's the only problem.
>
> (Q) You don't know one way or the other?
>
> (A) We don't know for sure.

(*Id.* at PageID.847.)

But at the summary judgment stage, speculation is insufficient. *See Frazier v. USF Holland, Inc.*, 250 F. App'x 142, 148 (6th Cir. 2007) ("To survive a summary judgment motion, a plaintiff must put forward more than speculations or intuitions."); *Jones v. City of Franklin*, 677 F. App'x 279, 282 (6th Cir. 2017) ("[C]onclusory allegations, speculation, and unsubstantiated assertions are not evidence, and are not sufficient to defeat a well-supported motion for summary judgment."). With no evidence of an unmaintained sprinkler system that failed to deploy on the night of the fire, Hallwood has not shown that H&R Block breached the lease, or that a genuine issue of material exists as to whether H&R Block breached

the lease, by violating fire safety codes. Thus, H&R Block is entitled to summary judgment on Hallwood's first counterclaim.

**2. Counterclaim II: Breach of Contract (Repair Obligations)**

H&R Block also seeks summary judgment on Hallwood's counterclaim that H&R Block failed to repair the unit, as required by Section 10(C) of the lease. (ECF No. 18, PageID.86; ECF No. 59, PageID.558). This issue has already been addressed in connection with Hallwood's motion for summary judgment on H&R Block's claims. The Court found that the plain and unambiguous language in Section 13 of the lease requires *Hallwood* to repair the unit after a fire, while it tasks H&R Block with replacing the HVAC system and any "equipment, trade fixtures, and inventory."

Nor can Hallwood avoid summary judgment by maintaining that H&R Block breached the lease by failing to make even these discrete repairs. For starters, Hallwood made clear in discovery that its counter-claims were limited to the alleged failure to maintain the sprinkler system and insurance. (ECF No. 63-2, PageID.1297 (Hallwood's interrogatory response stating that its counterclaims were about H&R Block's "[f]ailure to provide required insurance coverage and failure to maintain proper fire-prevention measures."); *id.* at PageID.1300–1301 (same).) It cannot now change course on summary judgment. *See, e.g., Grand Traverse Band of Ottawa & Chippewa Indians v. Blue Cross Blue Shield*, 146 F.4th 496, 511–512 (6th Cir. 2025) ("A plaintiff may not shift its theory of liability at the summary judgment stage in a way that materially alters the pleaded factual basis of its claim and prejudices the opposing party . . . A party may not pivot to a new factual basis for liability after the

close of discovery if that change would prejudice the opposing party. Neither may a plaintiff 'expand her claims to assert new theories . . . in response to summary judgment or on appeal.'") (citations omitted).

Moreover, as already addressed, the plain language of the lease provides that H&R Block's discrete repairs was conditioned on Hallwood restoring the space first. As H&R Block accurately summarizes: "Section 13 of the Lease required Hallwood Plaza to repair the Leased Premises to the condition it was when first presented to H&R Block after which H&R Block would need to repair its fixtures and finishings." (ECF No. 63, PageID.1283–1284.) So "[b]ecause Hallwood Plaza never undertook any repairs to the Leased Premises, H&R Block's repair obligations were never triggered." (*Id.*)

Thus, H&R Block, and not Hallwood, is entitled to summary judgment regarding the repair obligation counterclaim.

### 3. Counterclaim III: Breach of Contract (Indemnification)

Hallwood's third counterclaim arises from the prior two. Hallwood contends that H&R Block breached the lease by refusing to indemnify Hallwood for "[t]he damages caused by the August 8, 2023, incident" that "were directly or indirectly related to H&R Block's negligence and failure to maintain the premises in compliance with Section 10(C)." (ECF No. 18, PageID.86.) Hallwood believes that "Section 10(B) of the Lease Agreement requires H&R Block to indemnify Hallwood Plaza for damages arising from H&R Block's negligence, misuse, or failure to maintain the leased premises." (*Id.*) Both Hallwood and H&R Block seek summary judgment on

this claim. (ECF No. 59, PageID.558; ECF No. 56, PageID.346–347.) While the briefing on this issue is rather sparse, H&R Block has the better of the arguments.

For the reasons stated, and especially given Section 13 of the lease, Hallwood cannot establish that H&R Block caused any injury for which Hallwood is entitled to be indemnified, i.e., that it failed to maintain the leased premises or the sprinkler system under Section 10. Likewise, Shasho's bare speculation that "there must be a reason to think [the intoxicated driver] is connected to H&R Block somehow" while also confirming there are "no facts or evidence" to support that speculation (ECF No. 59-4, PageID.871), does not entitle Hallwood to any indemnification.

In its briefing, Hallwood relies on Section 11(A) of the lease, titled "Indemnify; Insurance." (ECF No. 59, PageID.541, 558; ECF No. 61, PageID.965–967.) But this provision is not referenced in the Counterclaim. (*See* ECF No. 18, PageID.86.) So it cannot now be the basis of Hallwood's summary judgment argument. *See Grand Traverse Band of Ottawa & Chippewa Indians v. Blue Cross & Blue Shield of Michigan*, No. 14-11349, 2024 WL 1342672, at *7 (E.D. Mich. Mar. 29, 2024) ("The Sixth Circuit has repeatedly held that plaintiffs may not expand their claims at summary judgment" because doing so would "allo[w] a plaintiff to raise new theories in response to a motion for summary judgment would 'den[y] a defendant sufficient notice of what claims to investigate.'") (internal citations omitted), *aff'd,* 146 F.4th 496 (6th Cir. 2025).

Nor does it alter the outcome. The provision reads as follows:

> (A) Tenant shall protect, defend, save harmless and indemnify Landlord and any fee owner of the Shopping Center from and against all losses,

> claims, liabilities, injuries, expenses (including legal fees), lawsuits and damages of whatever nature either (i) claimed to have been caused by or resulted from any act, omission or negligence of Tenant or its subtenants, concessionaires, employees, contractors and invitees no matter where occurring, or (ii) occurring in the Leased Premises except if caused by Landlord's negligence. Landlord shall not be liable under any circumstance for any injury or any loss or damage to or interference with any merchandise, equipment, fixtures, furniture, furnishing or other personal property or the business operations of Tenant or anyone in the Leased Premises occasioned by (i) the act or omission of persons occupying other premises, or (ii) any defect, latent or otherwise in any building or the equipment, machinery, utilities, or apparatus, or (iii) any breakage or leakage of the roof, walls, floor, pipes or equipment, or (iv) any backing up, seepage or overflow of water or sewerage, or (v) flood, rain, snowfall or other elements of Acts of God.

(ECF No. 18-1, PageID.102 (emphasis added).)

Hallwood primarily relies on the first sentence, that "Tenant shall . . . save harmless and indemnify Landlord . . . against all losses, claims, liabilities, injuries, expense (including legal fees), lawsuits and damages of whatever nature . . . (ii) occurring in the Leased Premises except if caused by Landlord's own negligence." (ECF 18-1, PageID.102; ECF No. 61, PageID.966.) And, continues Hallwood, because H&R Block "did not allege negligence against Hallwood" it is entitled to be indemnified for "any and all losses." (ECF No. 59, PageID.554, 558.) As H&R Block points out, however, this provision is about "third party claims not at issue in this litigation." (ECF No. 62, PageID.1243.) H&R Block also reiterates that "[t]hroughout discovery, Hallwood Plaza confirmed that its counterclaims were limited to H&R Block's alleged failure to maintain its fire sprinkler system and failure to maintain insurance."). Hallwood fails to refute this. And the Court has already found that, on the undisputed record and governing law, H&R Block is not liable for failing to

maintain the sprinkler system. The Court addresses the insurance issue below. Thus, summary judgment for H&R Block is appropriate on the indemnification counterclaim as well. Hallwood's motion is denied.

**4. Counterclaim IV: Breach of Contract (to Provide Insurance Coverage)**

For its fourth counterclaim, Hallwood alleges that "[p]ursuant to the Lease Agreement, H&R Block agreed to provide primary additional insured insurance coverage to Hallwood Plaza on H&R Block's commercial general liability insurance policy." (ECF No. 18, PageID.87.) Hallwood contends that H&R Block breached the lease agreement by failing to provide such coverage. (*Id.*) But this is belied by the record.

There is no dispute that Section 11 of the lease agreement required H&R Block to obtain "Commercial general liability ("CGL") insurance, up to $1,000,000, and to name the Landlord as additional insured" as well as an "Umbrella liability insurance policy, up to $5,000,000, and name Landlord as additional insured." (ECF No. 18-1, PageID.102.) It is equally undisputed that H&R Block maintained the required CGL insurance on which Hallwood was named as an additional insured. (ECF No. 59-3, PageID.569 (certificate); ECF No. 59-4, PageID.877–880 (Shasho deposition acknowledging that H&R Block had the required policy).) While Hallwood says it does not have the certificate for H&R Block's umbrella policy for up to $5,000,000, (ECF No. 59, PageID.542–543), other evidence in the record indicates that H&R Block had the policy. (*See* ECF No. 62-1, PageID.1272 (affidavit that H&R Block maintained insurance policies, as required by the contract, and named Hallwood as an additional

insured, but apparently, the insurance has not covered the fire damage), ECF No. 59-4, PageID.877–880 (Shasho deposition stating that H&R Block had the required insurance, but that coverage did not include fire damage).) Regardless, even if there is a fact dispute about the umbrella coverage, it is not a material one because an umbrella policy only kicks in if the CGL policy is depleted. (ECF No. 63, PageID.1285–1286.) That did not occur here because the CGL insurance company denied the claim, and thus, there can be no damages for this breach. (ECF No. 63, PageID.1285.) Hallwood, as an additional insured on the CGL policy, is free to pursue these insurance proceeds in a separate legal proceeding if it believes the policy covers the underlying event.

In sum, there is no genuine issue of material fact that H&R Block carried the requisite insurance under the lease agreement. So H&R Block is entitled to summary judgment on this claim, while Hallwood is not.

**5. Counterclaim V: Declaratory Relief**

H&R Block did not move for summary judgment on Hallwood's declaratory relief claim. (ECF No. 56.) But because all other counterclaims have been resolved in favor of H&R Block, there is no "actual controversy" remaining. *Doe v. Vanderbilt Univ.*, No. 18-00569, 2019 WL 4748310, at *11 (M.D. Tenn. Sept. 30, 2019) ("Because the Court has found that Plaintiff has failed to state any claim for violation of his rights, there exists no continuing controversy between Plaintiff and Vanderbilt to be settled and no justifiable basis for the issuance of a declaratory judgment at a later stage of this case."); *In re Krause*, 414 B.R. 243, 260 (Bankr. S.D. Ohio 2009) ("Because

those Counts are dismissed, a case or controversy no longer exists and issuance of a declaratory judgment based upon Count I would be equivalent to rendering an advisory opinion.”).

So Hallwood’s counterclaim for declaratory relief is dismissed.

**V.**

Accordingly, Hallwood’s motion for partial summary judgment on both H&R Block’s claims and its own counterclaims (ECF No. 59) is DENIED in most part and GRANTED only as to H&R Block’s claim for legal fees. As a result, H&R Block’s claims for breach of contract and declaratory relief may proceed.

Further, H&R Block’s motion for partial summary judgment on Counts I–IV of Hallwood’s counterclaims (ECF No. 56) is GRANTED. And because no live controversy exists, Hallwood’s sole remaining counterclaim for declaratory judgment (Count V) must be dismissed as well.

Finally, because the Court reviewed it, H&R Block’s motion for leave to file sur-reply (ECF No. 65) is GRANTED for the reasons stated therein.

IT IS SO ORDERED.

Dated: November 9, 2026

s/Laurie J. Michelson
LAURIE J. MICHELSON
UNITED STATES DISTRICT JUDGE